IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MODESTO CRUZ,** | : | CIVIL ACTION |
| | : | |
| **Plaintiff,** | : | |
| vs. | : | |
| | : | NO. 08-204 |
| **MICHAEL J. ASTRUE,** | : | |
| **Commissioner of Social** | : | |
| **Security** | : | |
| **Defendant.** | : | |

**MEMORANDUM**

**LYNNE A. SITARSKI**                                                        **DATE:   JUNE 22, 2009**
**UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Modesto Cruz ("plaintiff") sought judicial review pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  42 U.S.C. §§ 401, *et seq*.  On August 21, 2008, a notice, consent, and order of reference was filed by consent of the parties and order of court in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, giving this Court jurisdiction to order the entry of final judgment and conduct all post-judgment proceedings in this matter.  This Court heard Oral argument on January 12, 2009 and both parties subsequently submitted supplemental briefs at the request of the Court.

      This Court issued a Memorandum and Order on January 30, 2009, granting in part and denying in part plaintiff's Request for Review, and remanding the case to the to the Administrative Law Judge ("ALJ") for further proceedings in accordance with the fourth sentence of 42 U.S.C. § 405(g).  On March 17, 2009, plaintiff filed the instant motion for attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  The

Commissioner filed a brief in opposition to this motion, arguing that its position in the matter was "substantially justified" within the meaning of the EAJA. Plaintiff filed a reply brief.

For the reasons that follow, plaintiff's Motion for Attorney's Fees will be denied.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff applied for DIB on August 22, 1997, claiming back and neck impairments. (R. at 46). On December 3, 1997, his claim for benefits was denied. (R. at 27-28). Plaintiff timely requested a hearing before an ALJ, which was held on November 19, 1998. (R. at 176-197). The ALJ denied plaintiff's request for benefits on March 18, 1999. (R. at 11-19). The Appeals Council denied his request for review on October 11, 2001. (R. at 3-4). Plaintiff filed a civil action on November 19, 2001 (Dkt. No. 01-cv-5795). The District Court granted plaintiff's Motion for Summary Judgment in part, and remanded the matter to the Commissioner for consideration of all the relevant medical evidence in determining plaintiff's RFC and his ability to return to his past relevant work. (R. at 218-226).

On remand, plaintiff sought disability benefits for a closed period of time from November 23, 1996 through November 15, 2000. (R. at 212). During that closed period, plaintiff took various medications and underwent physical therapy for management of his pain. (R. at 57, 179-80). Plaintiff began working again on November 15, 2000 for his previous employer and continued working there until the employer relocated in 2005. The ALJ held a hearing on August 13, 2004. (R. at 289). The ALJ found that plaintiff was not disabled and that he could return to his past relevant work as a machine operator. (R. at 217). Plaintiff appealed this decision to the Appeals Council, which declined review on February 21, 2006. (R. at 198).

Plaintiff filed another civil action on March 2, 2006 (Dckt. No. 06-1008). On July 17, 2006, the Commissioner filed an Uncontested Motion For Remand (R. at 351), seeking remand for the ALJ to: (1) reevaluate plaintiff's RFC considering the state agency opinions; (2) address the treating physician's opinions that plaintiff is disabled and provide rationale for the weight assigned those opinions; (3) obtain vocational expert testimony to determine the physical and mental demands of plaintiff's past work; and (4) in the event plaintiff is unable to perform past work, determine if there are any other jobs plaintiff can perform. (R. at 352). This uncontested motion was granted on July 19, 2006 (R. at 348).

Plaintiff also filed a second application with a protective filing date of April 17, 2006, seeking benefits from August 30, 2004 forward. (R. at 373-75, 408). Plaintiff was granted benefits pursuant to this application. (R. at 371-72). In the second remand order, the Appeals Council consolidated the remanded action with the new application for consideration by the ALJ. (R. at 360-61).

A third hearing was held on April 24, 2007. (R. at 311). On September 26, 2007, the ALJ denied benefits for the closed period from November 23, 1996 to November 15, 2000, but granted benefits from November 7, 2005 forward. (R. at 310-21).

Plaintiff filed a third civil action on January 11, 2008, challenging the denial of benefits for the closed period from November 23, 1996 to November 15, 2000. The parties consented to magistrate judge jurisdiction and this Court issued a Memorandum and Order on January 30, 2009, granting in part and denying in part plaintiff's Request for Review, and remanding the case to the ALJ for proper assessment of the 2007 Medical Source Statement Concerning Nature and Severity of Impairments (Statement) completed by Melanie Ice, D.O.

This Court will now address plaintiff's Motion for Attorney's Fees pursuant to the EAJA.

3

## II.     LEGAL STANDARD

Under the EAJA, a claimant is eligible for a fee award in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action if: (1) the claimant is the prevailing party; (2) the government's position was not "substantially justified;" (3) no special circumstances exist to make the award unjust; and (4) any fee application is submitted to the court within 30 days of the final judgment in the action and is supported by an itemized statement.  *Comm'r, Immigration and Naturalization Service v. Jean*, 496 U.S. 154, 158 (1990).

The parties do not dispute that plaintiff was the "prevailing party," and the Commissioner does not contend that any special circumstances exist which would make the award of fees unjust.  The sole issue before this Court is whether the Commissioner's position was "substantially justified" so as to preclude an award of fees in this action.

"A position can be justified even though it is not correct, and...can be substantially (i.e. for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact."  *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988).  The Commissioner bears the burden of establishing that there was "substantial justification" for its position.  *Morgan v. Perry*, 142 F.3d 670, 684 (3d Cir. 1998).  Substantial justification under the EAJA means "justified in substance or the main - that is, justified to a degree that could satisfy a reasonable person."  *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993) (citing *Pierce*, 487 U.S. 552).  To demonstrate substantial justification for its position, the government must satisfy a three part test: (1) reasonable basis in the truth for the facts alleged; (2) reasonable basis in law for the theory propounded; and (3) reasonable connection between the facts alleged and legal theory advanced.  *Hanover Potato Prods.*, 989 F.2d at 128.  Importantly,

4

the position of the Commissioner includes the position taken in litigation, as well as the position that made the litigation necessary in the first place. *Id.*

Neither the Supreme Court nor the Third Circuit has spoken on the issue as to the proper focus or level of generality for deciding whether the Commissioner's position was "substantially justified," however, other Circuits have addressed this issue. Other Courts in this district have followed the Fourth and Seventh Circuits in applying a "totality of the circumstances" test that examines the entirety of the government's position in litigation when determining substantial justification. *See Segers v. Astrue*, 2009 WL 1289996 (E.D. Pa., May 8, 2009); *Williams v. Astrue*, 595 F.Supp.2d 582, 585-86 (E.D. Pa. 2009); *see also Roanoke River Basin Assoc. v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993); *Jackson v. Chater*, 94 F.3d 274, 278 (7th Cir. 1996). This analysis requires a specific inquiry into the non-prevailing party's reasonableness in the litigation and the overall approach of the non-prevailing party, rather than merely the final result of the litigation. *Williams*, 595 F.Supp.2d at 586.

**III.   ANALYSIS**

Plaintiff contends that the ALJ did not properly evaluate Dr. Ice's opinion, plaintiff's credibility, plaintiff's daughter's testimony, and plaintiff's RFC. Plaintiff further argues that the Commissioner's position on these issues did not have a reasonable basis in fact and law. The Court finds that, viewing the totality of the circumstances, the ALJ reasonably analyzed the case at hand and the Commissioner was substantially justified in its defense of the ALJ's decision denying benefits.

### A. Dr. Ice's Medical Source Statement

In November 1996, plaintiff was involved in an automobile accident, injuring his neck and back. (R. at 89, 298). In April 2007, Dr. Ice completed a medical source statement which specifically addresses the closed period from November 23, 1996 to November 15, 2000. (R. at 495). This statement imposes substantial limitations on plaintiff. *See* R. at 495-96. The ALJ agreed with Dr. Ice's assessment of plaintiff's condition, but only for the time period from November 7, 2005 forward.

The Commissioner points to the inconsistencies in Dr. Ice's records which do not support a finding of disability for the closed period throughout the decision in support of the reasonableness of the ALJ's conclusions. The ALJ noted (R. at 316) that in March 1998, plaintiff was found by Dr. Ice to have a "fair" and "fairly good" range of motion of his neck and shoulders, with no evidence of radiculopathy in the arms. (R. at 264). Dr. Ice's records indicate that plaintiff had improved lower back pain and improved flexion and "fair" to "good" ROM of neck, head, arms, and shoulders during this time period. (R. at 252, 253, 254, 264 ). The ALJ noted (R. at 315) that the lumbar spine MRI report of November 12, 1997 shows only mild degenerative changes with no herniation or stenosis. (R. at 509). Furthermore, Dr. Ice concluded in her assessment that plaintiff had upper body limitations caused by muscle spasm and pain in his neck, and that plaintiff was limited to ½ hour at a time with no more than two hours a day of standing/walking and one hour at a time but no more than two hours a day of sitting. (R. at 495-96). However, she never explained how the upper extremity impairments would affect plaintiff's sitting and standing/walking ability. Furthermore, the EMG study of plaintiff's upper extremities shows no electrodiagnostic evidence of acute denervation. (R. at 147, 150).

A review of the decision demonstrates that the ALJ meaningfully analyzed and adequately explained her denial of benefits based upon the inconsistencies in Dr. Ice's records and the objective tests.  However, the ALJ did not properly evaluate Dr. Ice's 2007 medical source statement.  This Court found that the ALJ misread the dates which this medical source statement addressed and therefore did not properly weigh Dr. Ice's opinion.  While the analysis employed by the ALJ may have been flawed in her failure to properly evaluate Dr. Ice's medical source statement, the analysis was reasonably based on the medical evidence of record.

The Commissioner did not believe that the ALJ misread the dates on the medical source statement.  The Commissioner believes that the ALJ correctly saw that the statement addressed the closed period of alleged disability, but that he found the statement persuasive *only* for the period from November 2000 forward.  The Commissioner's position is supported by Dr. Ice's inconsistent notes and other medical record notes cited above, which do not support a finding of disability.

For the reasons cited in the Court's Memorandum, this Court rejected this view of the ALJ's decision, but the Commissioner's position is not unreasonable in light of Dr. Ice's records and the objective tests of record, which do not support a finding of disability for the closed period of time.

Accordingly, the analysis was reasonable, and the Commissioner's position with respect to this issue is substantially justified.

   **B.**   **Plaintiff's Credibility**

The ALJ is required to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he is disabled by it.  *See* 20 C.F.R. § 404.1529(c).  The ALJ may reject testimony of subjective complaints where it is not consistent with the objective

medical evidence. *See Burns v. Barnhart*, 312 F.3d 113, 130-31 (3d Cir. 2002).

The ALJ acknowledged plaintiff's testimony at the 2004 hearing, at which plaintiff testified that he was unable to work due to neck immobility and back and leg problems. (R. at 316, 294). The ALJ explained that she considered the testimony of plaintiff, and found plaintiff to be "generally credible." However, the ALJ also noted that the objective medical findings regarding plaintiff's lumbar spine condition showed no herniation or stenosis of the lumbar spine, and that his condition was amenable to treatment with therapy and injections. (R. at 317). The ALJ examined plaintiff's subjective complaints and alleged functional limitations and contrasted them with other evidence regarding his daily living activities which included watching television, reading and engaging in Bible study, driving short distances, and attending church on Sundays (R. at 316, 185-88); conservative, effective treatment of therapy, medications and injections (R. at 317, 66-67, 106, 513, 515-16, 519-20); and objective test results (R. at 315-16, 277-78, 317).

In short, the ALJ weighed plaintiff's subjective complaints against the other evidence of record, and found plaintiff to be "generally credible." She nevertheless concluded that plaintiff was not disabled. Given the conflict between subjective complaints and the other evidence, the ALJ's finding that plaintiff was not totally credible was reasonable, and the Commissioner's defense of the same was substantially justified.

    **C.**    **Plaintiff's Daughter's Testimony**

Plaintiff argues that the ALJ merely summarized the testimony of plaintiff's daughter, Ms. Cruz, and did not properly explain the weight given to this testimony. Ms. Cruz testified at the November 1998 hearing. (R. at 189-96). The ALJ who authored this decision did not preside over that hearing.

The ALJ must "explicitly" weigh all relevant, probative and available evidence. *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir.1979). Only where the ALJ rejects conflicting probative evidence must the ALJ explain his findings and the reasoning for his conclusions. *Walker v. Comm'r of Soc. Sec.*, 61 F. Appx. 787, 788-89 (3d Cir.2003).

In *Cerar v. Sec'y of the Dept. of Health and Human Services*, 1995 WL 44551 (E.D. Pa., Feb. 1, 1995), the court addressed the ALJ's failure to address the credibility of claimant's spouse as follows,

> It is true that the ALJ failed to address the credibility of the claimant's husband explicitly, but this alone would not require remand, because the ALJ demonstrated he considered and analyzed all the medical evidence and plaintiff's subjective testimony concerning pain. The plaintiff's testimony was credited by the ALJ to the extent consistent with medical testimony; crediting the husband's testimony corroborating the plaintiff's would not have affected the ALJ's decision.

*Id.* at *4.

Ms. Cruz testified at the 1998 hearing that plaintiff had difficulty sitting for long periods of time and gardening. (R. at 192-93). She further stated that her father could not take long car rides without stopping and walking around. (R. at 195-96). The daughter's testimony related to plaintiff's problems with his legs (pain and numbness). She did not address any problems that she observed plaintiff having with his neck, where there appears to be the most significant problems documented by the medical evidence.

The ALJ appropriately considered and summarized this evidence. While Ms. Cruz' testimony partially corroborated some of plaintiff's subjective complaints, it does not necessarily conflict with the ALJ's finding that plaintiff is capable of performing sedentary work.[1]

---

[1] Sedentary work is defined in the C.F.R. as follows:

Furthermore, the ALJ did not have the opportunity to directly observe Ms. Cruz during her testimony.  Ms. Cruz is not an unbiased witness whose opinion would be entitled to great weight.  For these reasons, Ms. Cruz' testimony is not particularly probative, nor does it directly conflict with the ALJ's finding.  The ALJ did not ignore this testimony, but explicitly considered it in her decision, as was proper in this case.

Accordingly, the ALJ's treatment of plaintiff's daughter's testimony was reasonable and the Commissioner's position with respect to this issue is substantially justified.

### D. RFC Assessment

Plaintiff also contends generally that the ALJ did not adequately consider and explain in her decision the evidence which supports her RFC finding.  Specifically, plaintiff criticizes the ALJ's finding, stating that the ALJ did not give reasons for adopting the opinions of state agency medical consultants over treating physicians.

Of course, great weight is afforded to the medical opinions of the treating physician, but this deference is not without limitation.  *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993).  The ALJ may reject the opinion of a treating physician if the opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques, and if it is inconsistent with other substantial evidence in the record.  *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

The ALJ gave reasons for rejecting Dr. Ice's opinion in favor of the state agency

---

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. § 404.1567(a).

consultant's opinion, and cited to inconsistencies in Dr. Ice's records which would not support a finding of disability for the closed period.  As previously stated, the ALJ noted (R. at 316) that plaintiff had improved lower back pain and flexion with fairly good ROM of neck, head, arms, and shoulders during this time period.  (R. at 252, 253, 254, 264 ).   The EMG study of plaintiff's upper extremities shows no electrodiagnostic evidence of acute denervation (R. at 147, 150), and the lumbar spine MRI report of November 12, 1997 shows only mild degenerative changes with no herniation or stenosis (R. at 509).  Dr. Ice concluded in her assessment that plaintiff had upper body limitations caused by muscle spasm and pain in his neck, but she never explained how this would affect plaintiff's sitting and standing/walking ability and yet still greatly limited plaintiff's capabilities in these areas.  (R. at 495-96).

On December 3, 1997, the state agency consultant found that plaintiff could lift 20 pounds occasionally, and 10 pounds frequently, could stand/walk about 6 hours, sit about 6 hours, occasionally stoop and frequently climb, balance, kneel, crouch, and crawl.  (R. at 151-158).  On March 18, 1998, the state agency consultant found that plaintiff could lift 20 pounds occasionally, and 10 pounds frequently, could stand/walk about 6 hours, sit about 6 hours, occasionally stoop, crouch, crawl and frequently climb, balance and kneel.  (R. at 160-167).  The state agency opinions were most consistent with the medical evidence, and were therefore afforded substantial weight by the ALJ.

Therefore, the ALJ's RFC analysis was reasonable and the Commissioner was substantially justified in its defense of the ALJ's RFC assessment.

An appropriate Order follows.